**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **BUMBLE TRADING, INC. and BUMBLE HOLDING, LTD.,** | |
| *Plaintiffs/Counter-Defendants,* | Case No.: 3:18-cv-2578-K |
| **vs.** | |
| **MATCH GROUP, LLC,** | |
| *Defendant/Counter-Plaintiff.* | |

<u>**PLAINTIFFS BUMBLE TRADING, INC. AND BUMBLE HOLDING, LTD.'S
MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS AND BRIEF IN
SUPPORT**</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   PROCEDURAL HISTORY AND STATEMENT OF FACTS....................................... 2

III.  LEGAL STANDARD...................................................................................... 4

IV.  ARGUMENT .................................................................................................. 5

      A.    Counterclaims 7, 9, 10, and 11 Should Be Dismissed Under Rule 12(b)(1) Because This Court Lacks Subject-Matter Jurisdiction........................................ 5

           1.    There is no common nucleus of operative facts between Counterclaims 7, 9, 10 and 11 and the Patent Counterclaims. ................. 6

           2.    Even if the Court determines it could exercise supplemental jurisdiction over Counterclaims 7, 9, 10, or 11, it should choose not to. ...................................................................................... 8

           3.    Counterclaims 7 and 9 do not "arise" from federal law............................ 9

      B.    Counterclaims 1 Through 6 Should be Dismissed Because They are Redundant with Claims Already Being Litigated in the Western District of Texas. ............................................................................................ 12

      C.    The Court Should Use its Discretion to Dismiss Counterclaims 7, 9, 10, and 11.............................................................................................. 14

           1.    Counterclaims 7, 9, 10, and 11 merely duplicate Match's defenses to Bumble's claims in this case................................................................. 14

           2.    Even if Bumble's motion for voluntary dismissal of its claims is granted, Counterclaims 7, 9, 10, and 11 should be dismissed. ................ 15

V.    CONCLUSION............................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albritton Props. v. Am. Empire Surplus Lines*,
    No. 3:04-CV-2531-P, 2005 WL 975423 (N.D. Tex. Apr. 25, 2005).................................4, 14

*Alexander v. Woodlands Land Dev. Co.*,
    325 F. Supp. 3d 786 (S.D. Tex. 2018) ....................................................................................11

*Alphonse v. Arch Bay Holdings, L.L.C.*,
    618 F. App'x 765 (5th Cir. 2015) .............................................................................................8

*Aviva USA Corp. v. Vazirani*,
    902 F. Supp. 2d 1246 (D. Ariz. 2012) ....................................................................................15

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................4

*Canal Indem. Co. v. Wilburn Container X-Press, Inc.*,
    907 F. Supp. 185 (M.D. La. 1995)..........................................................................................17

*Cornett v. Longois*,
    275 F.3d 42 (5th Cir. 2001) ..................................................................................................6, 7

*Enochs v. Lampasas Cty.*,
    641 F.3d 155 (5th Cir. 2011) ...................................................................................................9

*Ford v. Monsour*,
    No. 11-1232, 2011 WL 4808173 (W.D. La. Oct. 11, 2011)...................................................17

*Griffith v. Alcon Research, Ltd.*,
    712 F. App'x 406 (5th Cir. 2017) ...........................................................................................10

*Gunn v. Minton*,
    568 U.S. 251 (2013)...........................................................................................................10, 12

*Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*,
    No. 3:05-CV-1883-P, 2006 WL 2285575 (N.D. Tex. Aug. 9, 2006).....................................14

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ..................................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Houston Gen. Ins. Co. v. Taylor Lumber & Treating, Inc.*,
   No. 96-1523, 1997 WL 40633 (E.D. La. Jan. 30, 1997)...........................................................17

*Ill. Cent. R.R. Co. v. Cain*,
   434 F. Supp. 2d 415 (S.D. Miss. 2006)..................................................................................16

*Int'l Harvestor Co. v. Deere & Co.*,
   623 F.2d 1207 (7th Cir. 1980) ...............................................................................................12

*Letot v. United Servs. Auto. Ass'n*,
   No. 05-14-01394-CV, 2017 WL 1536501 (Tex. Ct. App. Apr. 27, 2017), reh'g
   denied (Apr. 27, 2017)............................................................................................................11

*Mission Ins. Co. v. Puritan Fashions Corp.*,
   706 F.2d 599 (5th Cir. 1983) ..................................................................................................16

*Morgan Drexen, Inc. v. CFPB*,
   785 F.3d 684 (D.C. Cir. 2015)................................................................................................13

*Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*,
   No. EP-08-CV-297-DB, 2009 WL 10669371 (W.D. Tex. Aug. 13, 2009)............................16

*Pierce v. Hearne Indep. Sch. Dist.*,
   600 F. App'x 194 (5th Cir. 2015) .............................................................................................9

*PlainsCapital Bank v. Rogers*,
   715 F. App'x 325 (5th Cir. 2017) ...........................................................................................10

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ....................................................................................................4

*Sarkis' Café, Inc. v. Sarks in the Park, LLC*,
   55 F. Supp. 3d 1034 (N.D. Ill. 2014) .....................................................................................14

*Serco Servs. Co. v. Kelley Co.*,
   51 F.3d 1037 (Fed. Cir. 1995)................................................................................................12

*Stockman v. FEC*,
   138 F.3d 144 (5th Cir. 1998) ....................................................................................................4

*Torch, Inc. v. LeBlanc*,
   947 F.2d 193 (5th Cir. 1991) ..................................................................................................14

## TABLE OF AUTHORITIES
### (continued)

Page

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*,
   996 F.2d 774 (5th Cir. 1993) ...................................................................................4, 13, 14, 16

*United States v. Zanfei*,
   353 F. Supp. 2d 962 (N.D. Ill. 2005) .....................................................................................14

*Venable v. Louisiana Workers' Comp. Corp.*,
   740 F.3d 937 (5th Cir. 2013) .....................................................................................................6

*Waste Mgmt. v. Tex. Disposal Sys. Landfill, Inc.*,
   434 S.W.3d 142 (Tex. 2014)......................................................................................................11

*Welch v. Jannereth*,
   496 F. App'x 411 (5th Cir. 2012) ...............................................................................................9

*Xtria LLC v. Tracking Sys., Inc.*,
   No. 3:07-CV-0160-D, 2007 WL 1791252 (N.D. Tex. June 21, 2007)...................................14

**Statutes**

18 U.S.C. § 1441 ................................................................................................................................5

18 U.S.C. § 1454 ................................................................................................................................5

28 U.S.C. § 1331 .............................................................................................................................5, 9

28 U.S.C. § 1367 ....................................................................................................................5, 6, 8, 9

35 U.S.C. § 101 ..............................................................................................................................13

**Other Authorities**

10B Charles Allen Wright, et al., Federal Practice and Procedure § 2758 (4th ed.
   2018) ..........................................................................................................................................12

Federal Rule of Civil Procedure 5 ...............................................................................................21

Federal Rule of Civil Procedure 12 ..............................................................................1, 4, 5, 6

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs and Counter-Defendants Bumble Trading, Inc. and Bumble Holding Ltd. (together "Bumble") move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Defendant and Counter-Plaintiff Match Group, LLC's ("Match") First Amended Counterclaims (the "Counterclaims"):

## I.   INTRODUCTION

Match's use of the Declaratory Judgment Act turns the purpose of the statute on its head. Not one of Match's ten[1] declaratory relief Counterclaims is necessary to resolve a dispute between the parties.  Instead, Match's Counterclaims are little more than a gambit to control the forum of the real litigation of these issues.  This Court should dismiss the Counterclaims for myriad reasons discussed herein but, at base, should do so because Match is wasting the Court and the parties' time and resources in a forum-shopping maneuver that is remarkable for its transparency.

To start, Match re-alleges counterclaims seeking declarations that its patents are valid and have been infringed (Counterclaims 1-6, together the "Patent Counterclaims").  Match, however, is actively litigating *these exact* theories of infringement, based on *these exact* patents, against Bumble in another federal district court, and openly admits as much in other pleadings.  Match cannot prosecute a claim for damages in one court and maintain a declaratory relief claim on the same theory in another court.  Match obviously has no interest in declaratory relief, given its pending claims for money damages.  Instead, Match maintains these Patent Counterclaims in the present litigation only as a pretense for federal jurisdiction over Bumble's state-law claims and its other Counterclaims.

---

[1] Match identifies a Ninth, Tenth, and Eleventh Counterclaim, but does not allege an Eighth Counterclaim.

Next, Match has stated it does not oppose the voluntarily dismissal of Bumble's state-law tort claims that Match removed to this court.  But within minutes of its tacit agreement to dismissal of those claims, Match amended its Counterclaims to add declaratory relief claims that seek declarations that Match is not liable under these *same* tort theories (Counterclaims 7, 9 and 11, together the "Tort Counterclaims") and a further declaration that certain of these claims must be litigated in England and Wales (Counterclaim 10).  Match did not file these Counterclaims to get clarity on the issues.  Instead, as the timing of its amendment and its admissions elsewhere show, Match sought only to file first and thereby attempt to control the forum of the litigation.  By asserting the Tort Counterclaims, Match hopes to complicate Bumble's ability to refile these state-law claims in state court, where they belong.

But this Court has no jurisdiction to hear state-law tort and contract claims between non-diverse parties.  Moreover, the Fifth Circuit has explained that it is an abuse of the Declaratory Judgment Act to seek declaratory relief in anticipation of state-court litigation simply to take control of the forum away from the true plaintiff.  As such, Match's attempt to choose the forum of Bumble's future claims is fatally flawed.

The Court should not reward this abusive behavior and should instead dismiss the Counterclaims for the reasons stated herein.

## II.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

Match and Bumble are both in the business of online dating.  Match owns and operates Tinder, an established and popular dating app.  (Doc. No. 30 (the "Counterclaims") at ¶¶ 7, 11.) Bumble owns and operates Bumble, an up-and-coming competitor that has gained significant market share.

As a result of Bumble's growing threat to its market dominance, Match filed a complaint against Bumble in the Western District of Texas, (No. 6:18-cv-00080-RP-JCM (the "Western District Litigation")), on March 16, 2018 in which Match alleged various intellectual property and related claims concerning the design of the Bumble app.  (Doc. No. 1-1.)

On March 28, 2018, Bumble filed its own Original Petition in Dallas County state court concerning separate tortious conduct on the part of Match involving the improper use of confidential information Match received from Bumble and Match's interference with Bumble's business relations.  (Doc. No. 1-6 (the "Complaint").)  Bumble's Complaint alleged six claims arising from Match's actions and misrepresentations.  Bumble alleged claims for fraud, theft of trade secrets, unfair competition, interference with prospective economic relations, promissory estoppel, and commercial disparagement.  (*Id.* at ¶¶ 51-88.)

Match answered, alleged five counterclaims regarding infringement and the validity of its patents, and removed Bumble's Complaint to this Court on September 26, 2018.  (Doc. Nos. 1 & 1-16.)  Match then moved to transfer the litigation to the Western District of Texas.  (Doc. No. 5.)

On October 18, 2018, Bumble moved to voluntarily dismiss its claims.  (Doc. No. 23.)

Match feared that Bumble would file related tort claims in state court once its presently pending claims were dismissed, but Match did not want to litigate these state-law claims in state court.  To game the forum in which Bumble could file its future claims, Match took two actions at the same time.  It filed a nonopposition to Bumble's motion for voluntary dismissal.  (Doc. No. 32.)  But just before registering its nonopposition to dismissal, Match filed nearly identical claims as those Bumble sought to dismiss, reframed as declaratory relief claims seeking declarations of Match's non-liability.  (Doc. No. 31.)

The purpose of this ploy was simple:  Match anticipated Bumble's future filing of state-law tort claims in state court.  By alleging these declaratory relief claims, Match hoped to complicate this future filing.  Match would now argue that any claims filed in state court are precluded by its rapidly-filed declaratory relief claims that concern similar tortious conduct and are already pending in federal court.

The Court has yet to rule on Bumble's motion for voluntary dismissal and as such Bumble's six claims (and Match's ten counterclaims) are still pending before this Court.

## III.   LEGAL STANDARD

A court should grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "whenever it appears that subject matter jurisdiction is lacking."  *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Where a party fails to show subject matter jurisdiction, its claim must be dismissed.  *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Federal Rule of Civil Procedure 12(b)(6) "authorizes dismissal of a pleading for failure to state a claim upon which relief can be granted."  *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005).  A claim should be dismissed under Rule 12(b)(6) unless it "is plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 569-70 (2007).  A federal court has broad discretion to dismiss a claim for declaratory relief.  *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).  A motion for declaratory judgment "must do more than simply restate its defenses to the plaintiff's cause of action" or else it "fails to state a claim upon which relief can be granted."  *Albritton Props.*, 2005 WL 975423, at *2-3.

**IV.   ARGUMENT**

   **A.   Counterclaims 7, 9, 10, and 11 Should Be Dismissed Under Rule 12(b)(1) Because This Court Lacks Subject-Matter Jurisdiction.**

   Match alleges six patent-related declaratory relief claims (Counterclaims 1-6) and asserts the Court has subject-matter jurisdiction to hear these claims under 18 U.S.C. §§ 1441 and 1454. (Counterclaims at ¶ 5.)  Bumble does not contest that assertion in this motion.  However, the Court does not have subject-matter jurisdiction to hear Match's other claims, which all concern tort liability (or the forum in which it should be litigated) and raise only questions of state law.[2]

   Match contends that this Court has supplemental jurisdiction to hear Counterclaims 10 (regarding enforceability of a forum-selection clause) and 11 (regarding various state-law tort liability theories).  (Counterclaims at ¶ 5.)  But these state-law claims have no nexus with the Patent Counterclaims Match relies on for original jurisdiction and therefore Match fails to satisfy the requirements of 28 U.S.C. § 1367(a). Match half-heartedly contends that Counterclaims 7 (regarding interference with economic relations) and 9 (regarding commercial disparagement) create federal question jurisdiction but, recognizing the weakness of this position, also argues that the Court has supplemental jurisdiction over these claims as well.  (Counterclaims at ¶ 5 (alleging jurisdiction for these claims "pursuant to § 1331 and/or § 1367").)  These Counterclaims (7 and 9) do not necessarily rely on a substantial question of federal law and also lack sufficient nexus with the Patent Counterclaims—meaning the Court has neither federal question or supplemental jurisdiction over them.

---

[2] Bumble alleged claims that mirror Counterclaims 7, 9, and 11 in state court.  (Doc. No. 1-6.)  Match removed.  (Doc. No. 1.)  Bumble did not challenge removal at that time because it chose instead to seek voluntary dismissal of its claims.

As discussed in detail below, the Court (1) cannot exercise supplemental jurisdiction over Counterclaims 7, 9, 10, or 11; (2) should not, even if it could; and (3) does not have original jurisdiction over Counterclaims 7 and 9, as Match contends. For these reasons, the Court should dismiss Counterclaims 7, 9, 10, and 11 under Federal Rules of Civil Procedure, Rule 12(b)(1).

### 1.  There is no common nucleus of operative facts between Counterclaims 7, 9, 10 and 11 and the Patent Counterclaims.

A court has supplemental jurisdiction over state-law claims between non-diverse parties only when they "form part of the same case or controversy" as other claims properly before the court. 18 U.S.C. § 1367(a). The mere fact that federal and state-law claims are alleged against the same defendant does not confer supplemental jurisdiction over the state-law claims. *See Cornett v. Longois*, 275 F.3d 42, 42 (5th Cir. 2001). Instead, the Fifth Circuit has explained that claims must be "derive[d] from the same nucleus of operative facts" to form part of the same case or controversy. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013).

This standard is not met here. Match's Patent Counterclaims allege that Match owns three design and utility patents. (Counterclaims at ¶¶ 13-15.) Match further alleges that Bumble's app infringes these patents by, for example, allowing users to "swipe" on the profiles of other users to indicate interest (or lack thereof). (*See, e.g.*, *id.* at ¶ 28.) The nucleus of facts at issue in the Patent Counterclaims is therefore facts about the design and operation of the Bumble app.

This allegedly infringing conduct has ***no connection*** to the nucleus of facts at issue in Counterclaims 10 and 11. Those claims stem, instead, from Match's misuse of Bumble's confidential business information. (*See, e.g.*, *id.* at ¶¶ 145-46.) These two storylines simply do not intersect.

Counterclaim 10 concerns a nondisclosure agreement that the parties (or their affiliates) allegedly executed to allow Match to view Bumble's confidential information in connection with

Match's possible acquisition of Bumble.  However, Match does not allege *its* intellectual property (the subject of the Patent Counterclaims) was at issue in this agreement in any way.  (*Id*. at ¶¶ 148, 150-151.)  Specifically, Counterclaim 10 seeks a declaration regarding the enforceability of the forum-selection clause in the alleged nondisclosure agreement.  (*Id*. at Prayer, ¶ 11.)  There is no connection between the enforcement of this contract term and the enforcement of Match's patents. The only commonality between the underlying nuclei of facts is the common parties to the issues, which alone is not enough.  *See Cornett*, 275 F.3d at 42.

Counterclaim 11 is the same.  That claim asserts Match is not liable for fraud, unfair competition, promissory estoppel, or misappropriation of trade secrets in connection with its use of due diligence information received under the nondisclosure agreement.  (Counterclaims at ¶¶ 165-176.)  That is, Match seeks a declaration that its use of Bumble's confidential information was not tortious.  (*Id*.)  Again, there is no nexus between this inquiry and a determination of whether Bumble infringed on Match's patents—and Match makes no allegations showing how there could be.

In Counterclaims 7 and 9, Match seeks declaratory relief that "Match's conduct in connection with a potential acquisition of Bumble did not give rise to liability for tortious interference with prospective business relations . . . [or] business and commercial disparagement." (Counterclaims at Prayer, ¶¶ 9-10.)  Bumble pled in its Complaint that Match's conduct in filing and publicizing its patent lawsuit was tortious under these theories, but the declaratory relief Match seeks in its Counterclaims is different and broader.  (*Id*.)  By asking the Court to absolve "Match's conduct in connection with a potential acquisition of Bumble," untethered from Bumble's allegation about Match's suit, Match seeks relief regarding its entire course of negotiations.  The

nucleus of facts surrounding these negotiations is not the same as the nucleus of facts at issue in Patent Counterclaims.

> ### 2. Even if the Court determines it could exercise supplemental jurisdiction over Counterclaims 7, 9, 10, or 11, it should choose not to.

Even if the Court determines that it could exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), it should choose not to pursuant to 28 U.S.C. § 1367(c) and its otherwise broad discretion.

***Issues of State Law.*** Counterclaims 7, 9, and 11 raise novel and complex questions of state tort law, including whether Match's misuse of confidential information and other conduct is tortious and whether such conduct can constitute unfair competition. *See* 28 U.S.C. § 1367(c)(1); *see also, e.g.*, *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 769 (5th Cir. 2015) (unfair competition law claim raised novel and complex issues of state law rendering supplemental jurisdiction improper). Counterclaim 10 also raises novel and complex questions of state contract law, including the reach and enforceability of a forum-selection clause that selects for a foreign jurisdiction and its application to non-signatory parties that are alleged to be beneficiaries.

***Predominance Over Federal Questions.*** These state-law Counterclaims also predominate over the federal-law claims. *See* 28 U.S.C. § 1367(c)(2). The issues in the Patent Counterclaims are already being litigated for money damages in the Western District Litigation. Bumble initiated the present litigation solely to litigate separate state-law tort claims. Match raised its Patent Counterclaims for declaratory relief in the present matter as part of its defense of Bumble's state-law tort claims—not because Match seeks resolution of any patent-related issue independently in this forum. As such, this matter is firmly centered on Texas law, not federal patent law—something only further confirmed by Match's recently added Tort Counterclaims that sound in Texas law (albeit not expressly).

*Dismissal of Federal Claims.*   The Court should dismiss Match's Patent Counterclaims (*see* Section IV(B), *infra*) and therefore should dismiss Counterclaims 7, 9, 10, and 11 under 28 U.S.C. § 1367(c)(3).   *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 201 (5th Cir. 2015) ("The dismissal of all federal claims provides a powerful reason to choose not to continue to exercise jurisdiction.") (quotations and citation omitted).

*Other Compelling Reasons.*   The Court should dismiss these Counterclaims under 28 U.S.C. § 1367(c)(4) because Match has brought these claims for the sole and improper purpose of controlling the forum in which Bumble's state-law tort claims are litigated.   This is a compelling reason alone to refuse supplemental jurisdiction, which would only aid Match in its forum-selection games.   Moreover, the Court can consider "judicial economy, convenience, fairness, and comity."  *Welch v. Jannereth*, 496 F. App'x 411, 413 (5th Cir. 2012) (quotations and citation omitted).  These factors favor allowing Bumble, the true plaintiff, to choose its forum and to litigate these claims for money damages, instead of defending these claims for declaratory relief, and to do so in a state court that ought to resolve state-law issues.   This is so especially because the litigation is new and the parties have not expended significant resources already litigating them in federal court.  *See id.* at 413-14; *see also Enochs v. Lampasas Cty.*, 641 F.3d 155, 160 (5th Cir. 2011).

### 3.   Counterclaims 7 and 9 do not "arise" from federal law.

Match also alleges, without support, that this Court has jurisdiction over Counterclaims 7 and 9 pursuant to 28 U.S.C. § 1331.   (Counterclaims at ¶ 5 (alleging that this Court has supplemental "and/or" federal question jurisdiction over these claims).)  Not so.  "A case aris[es] under federal law for purposes of section 1331 when a plaintiff's well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief

necessarily depends on resolution of a substantial question of federal law." *Griffith v. Alcon Research, Ltd.*, 712 F. App'x 406, 408 (5th Cir. 2017) (quotations and citation omitted).  Neither prong applies here.

Counterclaims 7 and 9 concern **state-law tort claims** for commercial disparagement and interference with economic relations.  In fact, Match openly acknowledges that it seeks declaratory relief in connection with these claims in response to Bumble's Texas-law claims of the same variety.  (*E.g.*, Counterclaims at ¶¶ 120, 131, 133, 143.)  These claims are not "created" by federal law in any sense.  Instead, these claims are a product of Texas law.

Nor do these claims "necessarily depend[] on resolution of a substantial question of federal law." *Griffith*, 712 F. App'x at 408 (citation omitted).  In only a "slim category" of cases does a state-law claim depend on a federal question in the necessary way.  *See Gunn v. Minton*, 568 U.S. 251, 257-58 (2013).  As a result, such a finding is rare and disfavored.  *See PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 328 (5th Cir. 2017).  For a court to hold that a state-law claim creates federal question jurisdiction, each of four elements must hold:  The "federal issue [must be]: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (quoting *Gunn*, 568 U.S. at 258).  Match has failed to show any of these elements here.  Most obviously, Match has failed to show that Counterclaims 7 and 9 necessarily raise substantial federal questions.

***Necessarily Raised***.  In connection with Counterclaim 7, Match seeks broad declaratory relief that its "conduct in connection with a potential acquisition of Bumble did not give rise to liability for tortious interference with prospective business relations."  (Counterclaims at Prayer, ¶ 9.)  Nothing about this relief is specific to any federal question (e.g. whether Match's patent claims are frivolous).  Match could have committed tortious interference of this type in any number

of ways without implicating a question of federal law, as that tort requires only that Match's conduct was (1) independently wrongful or tortious and (2) interfered with Bumble's economic relations. *See, e.g.*, *Letot v. United Servs. Auto. Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501, at *8 (Tex. Ct. App. Apr. 27, 2017), *reh'g denied* (Apr. 27, 2017) (listing elements of intentional interference with prospective business relations). Because Match could be liable for tortious interference based solely on conduct that was tortious or wrongful under Texas state law (or some other, non-federal body of law), no federal question is necessarily raised. *See Alexander v. Woodlands Land Dev. Co.*, 325 F. Supp. 3d 786, 794 (S.D. Tex. 2018) ("When a claim can be supported by alternative and independent theories of recovery, one based on state law and the other on federal law, that claim may not form the basis for federal question jurisdiction because federal law is not a 'necessary' element of the claim.").

The same is true of Match's commercial disparagement claim. Match seeks a declaration that "Match's conduct in connection with a potential acquisition of Bumble did not give rise to liability for business and commercial disparagement." (Counterclaims at Prayer, ¶ 10.) But commercial disparagement requires only that Match published false statements with malice. *See Waste Mgmt. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014) (listing elements of commercial disparagement). Nothing about this requested relief "necessarily relies" on the resolution of a question of federal law. Instead, Match seeks broad immunity from future suit premised on ***any*** theory of disparagement stemming from its conduct at the time. That does not necessarily raise a federal question and therefore does not give rise to federal question jurisdiction. *See*, *e.g.*, *Alexander*, 325 F. Supp. 3d at 794.

*Substantial*. Even if the Court finds that issues of federal law have some bearing on the merits of the requested relief, those issues are not substantial "to the federal system as a whole."

*Gunn*, 568 U.S. at 260.  For example, even if the Court determines that the merits of Match's patent claims are necessarily at issue in Counterclaims 7 and 9—they clearly are not, given the scope of the requested relief—resolution of these state-law tort claims simply does not matter to the working of the federal court system.  In fact, the Supreme Court in *Gunn* considered analogous circumstances (although analogous only insofar as the Court finds resolution of Claims 7 and 9 requires resolution of the Patent Counterclaims).  There, plaintiff alleged a legal malpractice claim that turned on litigation of a patent claim.  *Id.*  Even though determining the merits of the patent claim was necessary to resolve the malpractice claim, the Supreme Court rejected federal question jurisdiction because such a determination by a state court would not undermine federal court supremacy in the patent realm or otherwise affect a substantial interest of the "federal system as a whole."  *Id.*  The same is true here.

### B.  Counterclaims 1 Through 6 Should be Dismissed Because They are Redundant with Claims Already Being Litigated in the Western District of Texas.

"A declaratory judgment should issue only when it will serve a useful purpose."  *Int'l Harvestor Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir. 1980).  Accordingly, when there are two actions in federal court that involve the same "parties and [] subject matter," an action for declaratory judgment in one matter "may be dismissed . . . if the other suit will satisfactorily resolve the controversy between the parties."  10B Charles Allen Wright, et al., Federal Practice and Procedure § 2758 (4th ed. 2018).  Courts routinely dismiss claims for declaratory relief when the relief sought is available in another matter.  *See, e.g.*, *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (upholding decision to dismiss first-filed action for declaratory judgment that the party was not infringing patent in favor of patent infringement suit in a different federal forum); *Int'l Harvester Co.*, 623 F.2d at 1217-18 (noting that even if the declaratory plaintiff, who sought a judgment that it was not infringing patent, had succeeded in "establishing a justiciable

controversy, declaratory relief would not be appropriate" because a "pending suit" concerning validity of that patent could render the declaratory suit "unnecessary"); *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 697 (D.C. Cir. 2015) (concluding that the district court did not abuse its discretion in declining to grant declaratory relief when doing so could result in "piecemeal litigation" and when a concurrent case in the Central District of California "could resolve all of the issues in the [declaratory] case"); *cf. Travelers Ins. Co.*, 996 F.2d at 777 n.9.

Here, Counterclaims 1 through 6 seek declaratory relief that the '811, '314, and '023 patents are both valid and were infringed by Bumble.  (*See* Counterclaims at ¶¶ 16-119.)  These claims raise identical issues to those at stake in Match's ongoing patent infringement suit against Bumble in the Western District Litigation.  (*See* Western District Litigation First Amended Complaint, Western District Docket, Doc. No. 10 (alleging that Bumble infringed the '811, '314, and '023 patents).)  Allowing Match to pursue those claims here would serve no useful purpose because the issues of validity and infringement will be resolved in the other matter.  Indeed, entertaining Match's attempt to game the forum through its motion for declaratory relief would "result in a waste of judicial time and resources."  *Travelers Ins. Co.*, 996 F.2d at 777 n.9.  For those reasons, this court should exercise its discretion to dismiss Match's Counterclaims 1 through 6.[3]

---

[3] Bumble previously moved to dismiss Match's original Counterclaims 1, 2, and 5 under 35 U.S.C. § 101 on the grounds that the '811 and '023 patent are directed to patent ineligible subject matter. (Doc. Nos. 20, 21.)  Patent eligibility of the '811 and '023 patents is currently being considered by Judge Albright in the Western District of Texas.  Judge Albright held a hearing on Bumble's motion to dismiss Match's First Amended Complaint in the Western District of Texas case on November 5, 2018 and is likely to rule on this issue in short order.  Bumble maintains that these patents are invalid under 35 U.S.C. § 101, but does not move to dismiss on this basis here to avoid wasting judicial time and resources, given the forthcoming ruling from Judge Albright.

**PLAINTIFFS' MOTION TO DISMISS**
**FIRST AMENDED COUNTERCLAIMS AND BRIEF IN SUPPORT—Page 13**

**C.      The Court Should Use its Discretion to Dismiss Counterclaims 7, 9, 10, and 11.**

"Declaratory relief is a matter of district court discretion."  *Torch, Inc. v. LeBlanc*, 947

F.2d 193, 194 (5th Cir. 1991).  And while that "discretion is broad, it is not unfettered."  *Travelers*

*Ins. Co.*, 996 F.2d at 778.  For the reasons discussed here, the factors appropriately taken into

consideration favor dismissal of Counterclaims 7, 9, 10, and 11.

**1.      Counterclaims 7, 9, 10, and 11 merely duplicate Match's defenses to**
**Bumble's claims in this case.**

Match filed its Tort Counterclaims while Bumble's mirror claims for relief are still before

the Court.  These Counterclaims are little more than denials of, and defenses to, Bumble's still

pending theories of tort liability.

But "a motion for declaratory judgment that merely restates a party's defenses is

insufficient unless the party can prove that there are issues of greater ramification to be resolved."

*Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, No. 3:05-CV-1883-P, 2006 WL 2285575, at

*3 (N.D. Tex. Aug. 9, 2006); *see also Albritton Props.*, 2005 WL 975423, at *2 (noting that a

counterclaim for declaratory judgment "must do more than merely deny the plaintiff's claim").

As such, courts consistently dismiss counterclaims for declaratory relief when those counterclaims

fail to present issues distinct from the issues raised by the claims in the case.  *See, e.g.*, *Albritton*

*Props.*, 2005 WL 975423, at *2; *Hanson Aggregates,* 2006 WL 2285575, at *3; *Xtria LLC v.*

*Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007)

(dismissing a claim for declaratory relief where that claim "essentially duplicate[d the party's]

breach of contract claim"); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill.  2005)

(dismissing counterclaim seeking declaratory judgment because counterclaim was "'essentially

identical' to the [plaintiff's] complaint except that it seeks the opposite effect"); *Sarkis' Café, Inc.*

*v. Sarks in the Park*, *LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014); *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1272 (D. Ariz. 2012).

Here, Match fails to raise a single issue in Counterclaims 7, 9, or 11 that is not already raised by Bumble's substantive claims in this case. (*Compare* Complaint at ¶¶ 51-88 (asserting claims of tortious interference, fraud, misappropriation of trade secrets, unfair competition, promissory estoppel, and commercial disparagement), *with* Counterclaims at ¶¶ 120-144, 165-76 (denying Bumble's claims of tortious interference, fraud, misappropriation of trade secrets, unfair competition, promissory estoppel, and commercial disparagement).) And Counterclaim 10 is just another defense to Bumble's claims in this case. For those reasons alone, this court should exercise its discretion to dismiss Counterclaims 7, 9, 10, and 11.

> **2.     Even if Bumble's motion for voluntary dismissal of its claims is granted, Counterclaims 7, 9, 10, and 11 should be dismissed.**

Bumble has sought to voluntarily dismiss its claims and Match has not opposed. (Doc. Nos. 23, 32.) As such, Match may argue that its Counterclaims go beyond mere defenses because the Court will dismiss Bumble's claims. As an initial point, Match choose to file its Counterclaims *before* the Court dismissed Bumble's claims (clearly to game the forum of any refiling). Match's Counterclaims were therefore defective at the time of filing for the reasons argued in Section IV(C)(1), *supra*. But even if Bumble's claims are dismissed before the Court rules on the present motion, Counterclaims 7, 9, 10, and 11 will still be defective.

When determining whether to grant declaratory relief, courts in the Fifth Circuit look to, among other factors, 1) whether the party seeking declaratory relief did so "in anticipation of a lawsuit" by the opposing party, 2) whether the party seeking declaratory relief "engaged in forum shopping in bringing" the claim, 3) "whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist," and 4) "whether retaining the

lawsuit in federal court would serve the purposes of judicial economy." *Travelers Ins. Co.*, 996 F.2d at 778 (considering these factors in the context of competing federal and state court actions). For the reasons discussed below, these factors ***all*** counsel in favor of dismissing counterclaims 7, 9, 10, and 11—even if Bumble's claims have already been dismissed.

*First*, Match filed its counterclaims in anticipation of a potential suit it believes Bumble might refile in state court. (*See* Match's Reply in Support of its Motion to Transfer Venue to the Western District of Texas, Doc. No. 31 (presuming that Bumble intends to "refile in state court").) This is fundamentally at odds with the purpose of the Declaratory Judgment Act and favors dismissal. *See Travelers Ins. Co.*, 996 F.2d at 777; *see also Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*, EP-08-CV-297-DB, 2009 WL 10669371, at *4 (W.D. Tex. Aug. 13, 2009) (distinguishing between the "legitimate purpose contemplated by the Declaratory Judgment Act" of bringing a declaratory judgment action to "avoid a multiplicity of suits" and the illegitimate purpose of seeking declaratory relief "in anticipation of a lawsuit to be filed by the [declaratory] defendant or to forum shop").

*Second*, Match transparently did so to stymie Bumble from filing in state court, and thereby to control the forum. But seeking declaratory judgment to "chang[e] forums or subvert[] the real plaintiff's advantage in state court" is improper. *Travelers Ins.*, 996 F.2d at 777; *see also Ill. Cent. R.R. Co. v. Cain*, 434 F. Supp. 2d 415, 422 (S.D. Miss. 2006) (concluding that granting a request for declaratory relief "would subvert" the ability of the true plaintiff to decide "where to seek" relief). Such gamesmanship in anticipation of possible litigation also amounts to improper forum shopping. *See Travelers Ins.*, 996 F.2d at 777; *Nautilus Ins. Co.*, 2009 WL 10669371, at *4.

*Third*, this has had the inequitable result of denying Bumble the right to choose its own forum and time to file its claims. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599,

602 (5th Cir. 1983) (holding it is proper to consider "the inequity of permitting [a party seeking declaratory relief] to gain precedence in time and forum by its conduct"); *see also Houston Gen. Ins. Co. v. Taylor Lumber & Treating, Inc.*, Civ. A. 96-1523, 1997 WL 40633, at *2 (E.D. La. Jan. 30, 1997) (noting that "the true 'plaintiff' in [a] dispute . . . has the right to choose the forum in which its claims will be determined").

**Fourth**, retaining the lawsuit in federal court serves no judicial economy.  For example, unlike cases where a party seeking declaratory relief faces multiple potential claims in a number of state courts, Match anticipates only one possible case.  *See Ford v. Monsour*, No. 11-1232, 2011 WL 4808173, at *5-6 (W.D. La. Oct. 11, 2011) (concluding retaining a declaratory suit would not "serve the purposes of judicial economy" because the declaratory plaintiff did not face "future suits by numerous plaintiffs in multiple state court forums").  Additionally, the case here is in the beginning stages of litigation, and—in fact—Bumble has already moved to voluntarily dismiss its claims.  *See Canal Indem. Co. v. Wilburn Container X-Press, Inc.*, 907 F. Supp. 185, 192 (M.D. La. 1995) (noting that "the extent to which [a] case ha[s] proceeded in federal court" is relevant to determining whether it would be efficient and in the interests of judicial economy to grant declaratory judgment).

These factors all militate toward dismissal.

V.   CONCLUSION

For the reasons set forth herein, Match's Counterclaims should be dismissed with prejudice.

Dated: November 15, 2018                    Respectfully submitted,

By: */s/ Megan M. O'Laughlin*
    Megan M. O'Laughlin (TX24013263)
    **HITCHCOCK EVERT LLP**
    750 North St. Paul Street, Suite 1110
    Dallas, TX 75201
    Telephone: (214) 953-1111
    Facsimile: (214) 953-1121
    molaughlin@hitchcockevert.com

    Deron R Dacus (TX 00790553)
    **The Dacus Firm, P.C.**
    821 ESE Loop 323, Suite 430
    Tyler, TX 75701
    Telephone: 903-705-1117
    Facsimile: 903-581-2543
    ddacus@dacusfirm.com

    Joseph M. Drayton (*pro hac vice*) (NY2875318
    **COOLEY LLP**
    1114 Avenue of the Americas
    New York, NY 10036
    Telephone:  (212) 479-6000
    Facsimile:  (212) 479-6275
    jdrayton@cooley.com

    Michael G. Rhodes (*pro hac vice*) (CA16127)
    Matthew Caplan (*pro hac vice*) (CA260388)
    **COOLEY LLP**
    101 California Street, 5th Floor
    San Francisco, CA 94111-5800
    Telephone (415) 693-2000
    Facsimile: (415) 693-2222
    mrhodes@cooley.com
    mcaplan@cooley.com

    Rose S. Whelan (*pro hac vice*) (DC999367)
    **COOLEY LLP**
    1299 Pennsylvania Ave., NW, Suite 700
    Washington, DC 20004
    Tel: (202) 842-7800
    Fax: (202) 842-7899
    rwhelan@cooley.com
    *Attorneys for Plaintiffs/Counter-Defendants: Bumble Trading,*
    *Inc. and Bumble Holding Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

On November 15, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Megan M. O'Laughlin*
Megan M. O'Laughlin


191363327