**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **BUMBLE TRADING, INC. and BUMBLE HOLDING, LTD.,** | |
| *Plaintiffs/Counter-Defendants,* | Case No.: 6:18-cv-00350-ADA |
| **vs.** | |
| **MATCH GROUP, LLC,** | |
| *Defendant/Counter-Plaintiff.* | |

**PLAINTIFFS BUMBLE TRADING, INC. AND BUMBLE HOLDING, LTD.'S**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS MATCH GROUP, LLC'S**
**FIRST AMENDED COUNTERCLAIMS**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT............................................................................................................. 1

    A.     Match's Opposition Only Reinforces Why its Patent Counterclaims
        Should be Dismissed.......................................................................................... 1

    B.     This Court Lacks Jurisdiction Over the Tort Counterclaims. .............................. 3

        1.     There is no federal question jurisdiction for Counterclaim 7. ................... 3

        2.     There is no federal question jurisdiction for Counterclaims 10 and
            11............................................................................................................ 5

        3.     There is no common nucleus of operative facts between the Tort
            Counterclaims and the Patent Counterclaims. ......................................... 6

        4.     Even if the Court concludes it could exercise supplemental
            jurisdiction over the Tort Counterclaims, it should decline to do so. ........ 7

    C.     The Court Should Exercise its Discretion under the Declaratory Judgment
        Act to Dismiss the Tort Counterclaims.................................................................. 9

III.   CONCLUSION......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astral Health & Beauty, Inc. v. Aloette of Mid-Miss., Inc.*,
   895 F. Supp. 2d 1280 (N.D. Ga. 2012) ..................................................................2, 10

*Bass & Hays Foundry Inc. v. Accucast Ltd.*,
   No. 4:15-CV-890-O, 2016 WL 6561598 (N.D. Tex. Feb. 17, 2016) ...................................4, 5

*Bostic v. AT&T of Virgin Islands*,
   166 F. Supp. 2d 350 (D.V.I. 2001) ..................................................................8

*Capco Int'l, Inc. v. Haas Outdoors, Inc.*,
   No. 3:03-CV-2127G, 2004 WL 792671 (N.D. Tex. Apr. 9, 2004) .........................................10

*Conlin v. Solarcraft, Inc.*,
   No. 4:14-CV-1852, 2014 WL 4809446 (S.D. Tex. Sept. 26, 2014) .........................................4

*Delgado v. M. Lipsitz & Co.*,
   No. 3:13-CV-4324-N, 2014 WL 11456820 (N.D. Tex. Jan. 28, 2014) ...................................4

*Driveline Retail Merch., Inc. v. Pepsico, Inc.*,
   No. 4:17-CV-00423, 2018 WL 2298386 (E.D. Tex. May 21, 2018).........................................2

*El Paso Apartment Ass'n v. City of El Paso*,
   No. EP-08-CV-145-DB, 2009 WL 10669390 (W.D. Tex. Apr. 15, 2009)..............................8

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
   547 U.S. 677 (2006)..................................................................4

*Everett Fin., Inc. v. Primary Residential Mortg., Inc.*,
   No. 3:14-CV-1028-D, 2016 WL 7378937 (N.D. Tex. Dec. 20, 2016)....................................2

*Forrester Environmental Services, Inc. v. Wheelabrator Technologies, Inc.*,
   715 F.3d 1329 (Fed. Cir. 2013)..................................................................5

*Gold v. Local 7 United Food & Commercial Workers Union*,
   159 F.3d 1307 (10th Cir. 1998) ..................................................................8

*Gomez v. O'Reilly Auto. Stores, Inc.*,
   283 F. Supp. 3d 569 (W.D. Tex. 2017)..................................................................4

*Gunn v. Minton*,
   568 U.S. 251 (2013)..................................................................5

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Household Bank v. JFS Group*,
 320 F.3d 1249 (11th Cir. 2003) .................................................................................6

*Ill. Cent. R.R. Co. v. Cain*,
 434 F. Supp. 2d 415 (S.D. Miss. 2006)....................................................................10

*Jang v. Boston Scientific Corp.*,
 767 F.3d 1334 (Fed. Cir. 2014)..................................................................................5

*Katz v. Gerardi*,
 655 F.3d 1212 (10th Cir. 2011) ..............................................................................2, 3

*Larson v. Gen. Motors Corp.*,
 134 F.2d 450 (2d Cir. 1943)......................................................................................10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
 No. 2:13-CV-655, 2014 WL 4352533 (E.D. Tex. Sept. 2, 2014).............................7

*In re Lyon Fin. Servs., Inc.*,
 257 S.W.3d 228 (Tex. 2008) (per curiam)..................................................................9

*Mission Ins. Co. v. Puritan Fashions Corp.*,
 706 F.2d 599 (5th Cir. 1983) ...................................................................................10

*Oliney v. Gardner*,
 771 F.2d 856 (5th Cir. 1985) ..................................................................................2, 3

*Perry Homes v. Cull*,
 258 S.W.3d 580 (Tex. 2008).......................................................................................9

*PlainsCapital Bank v. Rogers*,
 715 F. App'x 325 (5th Cir. 2017) ...............................................................................4

*Styskal v. Weld County Bd. of Cty. Comm'rs*,
 365 F.3d 855 (10th Cir. 2004) ...................................................................................8

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*,
 996 F.2d 774 (5th Cir. 1993) ...................................................................................10

*TTEA v. Ysleta del Sur Pueblo*,
 181 F.3d 676 (5th Cir. 1999) .....................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Vanover v. NCO Fin. Servs., Inc.*,
    857 F.3d 833 (11th Cir. 2017) ........................................................................2

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977).............................................................................3

**Statutes**

28 U.S.C. § 1367...............................................................................................5, 7

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(1) .................................................................................6

13D Wright & Miller, Federal Practice & Procedure, § 3567.3 (3d ed. 2018)................................7

TO THE HONORABLE UNITED STATES DISTRICT COURT:

## I.    INTRODUCTION

Match argues its Counterclaims are meant to clear the air.  But its Opposition exposes that the Counterclaims are nothing more than procedural gambits.  First, Match asserts identical patent infringement claims in a separate action—which, of course, it cannot do.  Match promises to address that by moving to consolidate.  But in the process, Match would bootstrap state-law claims that are not within this Court's jurisdiction and would add a new defendant into the original action that it previously chose not to sue.  Circuit Courts, including the Fifth Circuit, admonish district courts to watch out for exactly this kind of gamesmanship with duplicative complaints.  Second, Match would turn the Declaratory Judgment Act into a forum shopping cart—using state-law based declaratory relief claims that have no place in federal court to prevent Bumble from pursuing its claims in state court.  The Court should not permit Match to game the system like this.[1]

## II.    ARGUMENT

### A.    Match's Opposition Only Reinforces Why its Patent Counterclaims Should be Dismissed.

Match's Opposition effectively concedes that its Patent Counterclaims are entirely redundant with claims it asserts in the earlier 18-cv-80 action. (Opp. at 2.)  Bumble's Motion cites to a bevy of authorities that call for dismissal in these circumstances.  (Mot. at 12-14.)

Rather than addressing Bumble's argument and authority head on, Match cites to a single out-of-circuit district court decision for the dubious claim it can litigate "entirely redundant" claims

---

[1] Match opens its Opposition by listing "shenanigans" it accuses Bumble of, namely filing a complaint against Match, waiting to serve it, and stirring media reaction to the litigation.  Match omits that it *first* filed a complaint, waited to serve it, and stirred media reaction to the litigation— and did so at the exact moment Bumble was negotiating a possible acquisition with third parties.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 1**

against the same defendant in separate actions.  (Opp. at 2 (citing *Astral Health & Beauty, Inc. v. Aloette of Mid-Miss., Inc.*, 895 F. Supp. 2d 1280, 1284 (N.D. Ga. 2012).)  But even Match's lone authority, *Astral Health*, does not endorse Match's tactics.[2]  *Id*.  Match simply cannot "maintain two separate actions involving the same subject matter" regardless of whether the claims are for declaratory relief or money damages.  *See Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); *see also Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011).[3]

Match also argues that because its Patent Counterclaims seek money damages against Bumble Holding, which is not a defendant in the 18-cv-80 action, the claims are not redundant. (Opp. at 2.)  As an initial matter, this argument does not apply to the Counterclaims asserted against Bumble Trading, which should be dismissed as to that counterclaim defendant regardless.  As for Bumble Holding, Match should not be permitted to assert duplicative claims here in an attempt to essentially add a new defendant to the 18-cv-80 action.

Match did not allege claims against Bumble Holding in the 18-cv-80 action.  That failure also raises the specter that Match can no longer allege patent claims against Bumble Holding in later copy-cat actions under the claim-splitting doctrine.  *See*, *e.g.*, *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 842 (11th Cir. 2017) (claim-splitting doctrine allowed district court to refuse

---

[2] In *Astral Health*, the court discussed a narrow exception to the routine practice of dismissing redundant declaratory relief claims.  Namely, when "contract interpretation lies at the heart of the case" and the *defendant* seeks declaratory relief, in the *same litigation*, to ensure that if it is found not liable, the Court goes a step further and clarifies that the defendant's interpretation of the contract is also correct (which otherwise would be left uncertain).  895 F. Supp. 2d at 1284.

[3] Even if this case were consolidated with the 18-cv-80 action, the Patent Counterclaims should still be dismissed.  *See*, *e.g.*, *Driveline Retail Merch., Inc. v. Pepsico, Inc.*, No. 4:17-CV-00423, 2018 WL 2298386, at *10 (E.D. Tex. May 21, 2018); *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-CV-1028-D, 2016 WL 7378937, at *18 (N.D. Tex. Dec. 20, 2016).

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 2**

joinder of later-added defendant known at time of complaint); *Katz*, 655 F.3d at 1218-19 (doctrine against claim-splitting requires all claims on a set of facts to be alleged at once).

Match asserts the duplicative Patent Counterclaims currently at issue to try to gain an advantage on these procedural issues—Match wants to consolidate its redundant counterclaims with its original action to bring Bumble Holding into the earlier-in-time litigation.  (Opp. at 2 ("[T]he cases should be consolidated").)   But a party cannot file a procedurally defective duplicative pleading and then seek consolidation to bootstrap a procedural advantage it did not have in the earlier action.  *See, e.g.*, *Oliney*, 771 F.2d at 859 (admonishing courts to police against "the incorrect procedure of filing duplicative complaints to expand the procedural rights"); *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) (same).  As a result, the Court should dismiss the duplicative Counterclaims asserted against both Bumble entities.

>    B.    **This Court Lacks Jurisdiction Over the Tort Counterclaims.**

>        1.    **There is no federal question jurisdiction for Counterclaim 7.**

Match's Opposition attempts to rewrite Counterclaim 7 to avoid dismissal for lack of jurisdiction.   That Counterclaim seeks:  "A declaratory judgment that Match's conduct in connection with a potential acquisition of Bumble did not give rise to liability for tortious interference with prospective business relations."  (Counterclaims at Prayer, ¶ 9.)  That is, Match seeks a declaration that ***nothing*** it did during a months-long negotiation for an acquisition of Bumble gives rise to state-law liability for interference with prospective business relations.

Match asks the Court to pretend that Counterclaim 7 seeks a much narrower declaration than it actually does:  That Match cannot be liable for tortious interference specifically for filing the 18-cv-80 patent action.  (Opp. at 4.)  Match wants this fiction so it can argue the claim turns exclusively on the frivolity of the separate patent litigation, and therefore depends on a federal question.  (*Id.*)  But an opposition is not a vehicle for amendment.  As drafted, Counterclaim 7

does not "necessarily depend[]" on resolution of a question of federal law—a rare and disfavored finding—but rather seeks broad immunity from state tort law claims.  (*See* Mot. at 10); *see also, e.g.*, *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 330 (5th Cir. 2017) (federal question not necessarily raised where alternative grounds for liability rested in state law).

Even if Match's fiction were true, and Counterclaim 7 sought only a declaration that Match's filing of the 18-cv-80 was not tortious, it still would lack federal question jurisdiction.  A claim must necessarily raise a federal question *and* that question must be substantial to the federal system as a whole.  (Mot. at 11-12.)  Match argues its "patent portfolio may be . . . asserted against others" and therefore questions about patent validity have broader relevance.  (Opp. at 5-6.)  But Match states repeatedly that the filing of Match's lawsuit is actionable only if all of the claims (patent and otherwise), *as alleged against Bumble*, are so frivolous as to be a sham (Opp. at 5 ("Bumble must prove that the entire 18-cv-80 case is a 'sham.'")).  This is the kind of "fact-bound and situation-specific" question that the Supreme Court has said does not matter outside the scope of the litigation itself, and therefore does not raise a substantial issue of federal law *even* if federal law is necessarily raised.  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).  Courts in this circuit consistently interpret the substantial question test narrowly and reject federal question jurisdiction even where federal questions are necessarily raised.[4]  As the court in *Bass & Hays Foundry Inc. v. Accucast Ltd.* warned, the federal docket will be "flooded" if any state law claims affecting a "federally created property interest" can be "recharacterize[d] . . . as

---

[4] *See, e.g.*, *Gomez v. O'Reilly Auto. Stores, Inc.*, 283 F. Supp. 3d 569, 577 (W.D. Tex. 2017); *Conlin v. Solarcraft, Inc.*, No. 4:14-CV-1852, 2014 WL 4809446, at *4 (S.D. Tex. Sept. 26, 2014) (finding "the federal system is not concerned" with state law tort liability, even where patent issues are implicated); *Delgado v. M. Lipsitz & Co.*, No. 3:13-CV-4324-N, 2014 WL 11456820, at *2 (N.D. Tex. Jan. 28, 2014).

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 4**

. . . 'deserving' federal jurisdiction." No. 4:15-CV-890-O, 2016 WL 6561598, at *3 (N.D. Tex. Feb. 17, 2016).[5]

### 2.     There is no federal question jurisdiction for Counterclaims 10 and 11.

Just as it did with Counterclaim 7, Match's Opposition reinvents Counterclaims 10 and 11 to try to create jurisdiction where there was none before. Match now argues that this Court has federal question jurisdiction over "aspects" of these claims because Counterclaim 11 (but not 10) supposedly relates to the federal Defend Trade Secrets Act ( "DTSA").

This is a transparent shift in position mid-briefing. To start, the jurisdiction section of Match's Counterclaims disagrees with this new theory. Match alleges there that this Court can hear Counterclaims 10 and 11 under § 1367, *not* under §1331. (Counterclaims at ¶ 5.) Match effectively admits that it invented this new theory of jurisdiction only after seeing Bumble's motion. (*See* Opp. at 10, n.6.) Moreover, the DTSA is *never mentioned* anywhere in the Counterclaims. Instead, the Counterclaims reference only the Texas Uniform Trade Secrets Act. (Counterclaims at ¶ 153.)[6] Match has fabricated a federal trade secrets issue in an attempt to create

---

[5] Match ignores this precedent and instead relies on two distinguishable out-of-circuit cases. (Opp. at 6.) In *Forrester Environmental Services, Inc. v. Wheelabrator Technologies, Inc.*, the court referenced outdated case law regarding allegedly false statements about the validity of a patent— claims that *required* the court to rule on validity (unlike the claim here). 715 F.3d 1329, 1334 (Fed. Cir. 2013). Even then, the Federal Circuit was unsure if the referenced line of cases survived the Supreme Court's test articulated in *Gunn v. Minton*, 568 U.S. 251 (2013)—and ultimately ruled the facts before it *did not* suggest a substantial federal question. *Id*. *Jang v. Boston Scientific Corp.*, is even further distinguishable, as that case was before the district court *on diversity jurisdiction*. 767 F.3d 1334, 1338 (Fed. Cir. 2014). The only question was which circuit court should hear the appeal, given the contract claim at issue again *required* a finding on patent validity that risked a circuit split. *Id*.

[6] Moreover, by Match's own articulation of the Article III standard, it could not bring a DTSA declaratory relief claim, even if it was given leave (which it has not requested). (Opp. at 8.) Bumble has never alleged that Match violated the DTSA, and therefore there is no controversy as to that issue—*as argued by Match itself*. (*Id*.)

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 5**

jurisdiction.  In truth, Counterclaims 10 and 11 are a reaction to Bumble's Texas state-law claims.[7]

### 3.   There is no common nucleus of operative facts between the Tort Counterclaims and the Patent Counterclaims.

*Counterclaims 7 and 9.*  Counterclaims 7 and 9, as pled, do not share a common nucleus

of operative facts with the Patent Counterclaims.  (Mot. at 7-8.)  Match's Opposition tries to

dispute this by arguing that these Counterclaims necessarily turn on the merits of Match's patent

claims in the 18-cv-80 litigation and citing cases that address such circumstances.  (Opp. at 8.)

But Match's description of its claims in its brief and the relief it has requested in its pleading do

not match.  (Mot. at 7-8.)  These claims seek declaratory relief that Match's conduct over the

course of a months-long negotiation was not tortious.  This is fundamentally a separate set of facts

from the facts that will dictate whether Bumble committed patent infringement.  (*Id.*)

To cure this defect, Match makes the bizarre argument that it lacks Article III standing to

request the relief it seeks *in its own pleading*, and therefore the Court should read the requested

relief more narrowly than it is drafted.  (Opp. at 8.)  But the Court is not tasked with rewriting

Match's claims to make them tenable.  If Match lacks Article III standing to bring this claim, which

it appears to admit, the only option is dismissal.  Fed. R. Civ. Proc. 12(b)(1).

*Counterclaims 10 and 11.*  Counterclaims 10 and 11 concern Match's liability under state

tort-law theories and contractual issues regarding the forum those claims should be litigated in.

They have *no* connection with the Patent Counterclaims.  (Mot. at 6-7.)  Match barely contests the

---

[7] Match's reliance on *Household Bank v. JFS Group*, 320 F.3d 1249 (11th Cir. 2003) and *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999) to argue that it is justified in bringing a federal trade secrets claim—which it did not do—is unpersuasive because those cases are distinguishable on their facts.  For example, in *Household Bank*, the declaratory plaintiff brought an action in part *under federal law* in anticipation of a *threatened* lawsuit that related to an already pending suit that *included a federal claim*.  320 F.3d at 1252.  Unlike those cases, Match *did not* bring a declaratory claim under federal law, and inquiring about what claims Bumble *could* have brought makes no sense—Bumble already did bring its claims.

point.[8]  The Court need only look at Counterclaims 10 and 11 to see the lack of nexus.

Recognizing as much, Match's Opposition relies primarily on an alternative and tortured path to supplemental jurisdiction.  Match again argues that some aspect of Counterclaim 11 seeks a declaration that Match did not violate the federal DTSA and that creates supplemental jurisdiction for the rest of Counterclaim 11 and somehow also Counterclaim 10.  (Opp. at 10.) This theory fails because Match has not, and by its own logic cannot, allege a declaratory relief claim under the DTSA.  (*See* Section II(B)(2), *supra*.)

### 4.      Even if the Court concludes it could exercise supplemental jurisdiction over the Tort Counterclaims, it should decline to do so.

Match has failed to demonstrate that this Court should exercise discretion to hear its declaratory relief claims under 28 U.S.C. § 1367, and its Opposition only highlights that point.

***Dismissal of Federal Claims.***  To begin, the Opposition ignores the possibility that the Patent Counterclaims will be dismissed.  They should be.  (*See* Section II(A), *supra.*)  As such, the Court should refuse to exercise supplemental jurisdiction over state-law claims.  (Mot. at 9.)

***Predominance over Federal Questions.***  Match argues supplemental jurisdiction should only be denied under § 1367(c)(2) where "a federal tail [is] wag[ging] what is in substance a state dog."  (Opp. at 13.)  But the tail that wags the dog approach is "a particularly narrow view of § 1367(c)(2)."  13D Wright & Miller, Federal Practice & Procedure, § 3567.3 (3d ed. 2018); *cf.,*

---

[8] Match notes that Bumble's original petition alleged a scheme in which Match both stole trade secrets and later injured Bumble by asserting frivolous patent claims.  (Opp. at 10.)  Bumble's claims are not at issue—Match's counterclaims are.  And they do not require the Court to consider any broader scheme.  Match also confuses two issues:  even if Match's *filing* of 18-cv-80 action was evidence of a broader plan, that would not mean that the facts that go to the merits of the filed claims—which are separate from the filing itself—are common to the facts at issue in Counterclaims 10 and 11.  *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4352533, at *3 (E.D. Tex. Sept. 2, 2014).

*e.g.*, *El Paso Apartment Ass'n v. City of El Paso*, No. EP-08-CV-145-DB, 2009 WL 10669390, at

*2-4 (W.D. Tex. Apr. 15, 2009).  Regardless, this case is a state dog that has been wagged by a

procedurally dubious federal tail.  Bumble filed tort claims against Match in state court.  Match

removed the case by tacking on patent counterclaims that it was *already* litigating elsewhere.  Then

Match added a range of state-law declaratory relief claims only after Bumble sought to voluntarily

dismiss its affirmative claims.  Once the duplicative Patent Counterclaims are properly dismissed,

the only federal issue left is the DTSA claim Match made up in its Opposition—again to try to

create jurisdiction.

The impropriety of supplemental jurisdiction is even more obvious when considering the

legal standard.  Courts have discretion to dismiss state-law claims that require "a different inquiry"

than the federal claim.  *El Paso Apartment Ass'n*, 2009 WL 10669390, at *4; *see also Gold v.

Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310-11 (10th Cir. 1998),

*abrogation on other grounds recognized by Styskal v. Weld County Bd. of Cty. Comm'rs*, 365 F.3d

855 (10th Cir. 2004) (affirming dismissal of state-law claims that involved "a factual question

predominantly distinct in scope from the federal issue"). The Patent Counterclaims here do involve

"a different inquiry," *El Paso Apartment Ass'n*, 2009 WL 10669390, at *4, because they "will

present no occasion to inquire" about Match's conduct during its negotiations with Bumble, *Bostic

v. AT&T of Virgin Islands*, 166 F. Supp. 2d 350, 365 (D.V.I. 2001).  Match does not contend

otherwise, but instead argues the reverse—that the state-law claims will call for an inquiry into the

federal claims (also not so).

**Issues of State Law.**  Match admits that its state-law Counterclaims may be "complex,"

but contests whether they raise novel and complex issues of state law.  (Opp. at 12.)  They do.

Counterclaim 10 concerns the enforceability of a forum selection clause that allegedly binds two

Texas corporations, which would apparently mandate resolution of a Texas Uniform Trade Secret

Act claim in an English court.  Moreover, Match appears intent on expanding the reach of that

clause to broad and undefined fraud and unfair competition claims under Texas law *and* to apply

that clause to nonsignatory parties.  But Texas does not enforce forum selection clauses that

contravene public policies, that overreach, or that are waived by conduct (such as litigating covered

claims in Texas courts, as Match is doing right now).  *See*, *e.g.*, *In re Lyon Fin. Servs., Inc.*, 257

S.W.3d 228, 231–32 (Tex. 2008) (per curiam); *Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex.

2008).  These are complex issues that have not been clearly resolved.  Counterclaim 11 purports

to seek a declaration that Match has not committed *any* tortious conduct, under four different state-

law theories, over the course of a months-long negotiation to acquire Bumble.  To truly resolve

this claim would require the parties to litigate *virtually every aspect of Texas commercial tort law*.

   ***Other Compelling Reasons.***  Match concedes it is forum shopping, but just not in a

"disfavored" way.  (Opp. at 14.)  This argument fails for the reasons discussed in Section II(C),

*infra*.  Match should not be allowed to manipulate the forum to force Bumble, the true plaintiff, to

defend declaratory relief claims in federal court.  And Match's argument that convenience supports

retaining supplemental jurisdiction is specious: Bumble sued in Dallas, where Match is

headquartered.

   **C.     The Court Should Exercise its Discretion under the Declaratory Judgment Act
            to Dismiss the Tort Counterclaims.**

   Contrary to Match's arguments, the factors that guide a court's decision of whether to

dismiss a claim for declaratory relief support dismissing the Tort Counterclaims.

   ***Anticipatory Filing, Forum Shopping, and the Equities.***  Match wrongly argues that

forum shopping in this context is only subversive and "anticipatory" if the aim is to change the

law that will be applied.  (Opp. at 18.)  Even the cases Match cites say otherwise—an attempt to

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 9**

control the *forum* also constitutes improper anticipatory filing of declaratory relief claims and is inequitable. *Capco Int'l, Inc. v. Haas Outdoors, Inc.*, No. 3:03-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004) (finding it improper to "divest[] the 'true plaintiff'" of choice in forum); *see, e.g.*, *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 777 (5th Cir. 1993) (similar); *Ill. Cent. R.R. Co. v. Cain*, 434 F. Supp. 2d 415, 422 (S.D. Miss. 2006) (similar); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (noting inequities of allowing declaratory plaintiff to control forum).  That is exactly what Match seeks to do here— control the forum that Bumble's state-law claims are litigated in.

     ***Convenience and Judicial Economy.***   Match repeatedly states that allowing its Tort Counterclaims to move forward will save judicial resources.  Not so.  To begin, Match is not facing multiple potential suits by multiple parties.  (Mot. at 17.)  Additionally, Bumble has made clear that any claims that it might pursue in the future against Match would be "different" than Counterclaims 7, 9, 10, and 11.  (*See* Caldwell Dec. ¶ 6.)  Therefore, adjudicating the Tort Counterclaims now would not avoid piecemeal litigation and would instead use resources to resolve a dispute that is currently at best "shadowy." *Larson v. Gen. Motors Corp.*, 134 F.2d 450, 452-53 (2d Cir. 1943).

     ***Duplication of Pending Claims and Defenses.***   Match ignores the plethora of authority instructing courts to dismiss claims for declaratory relief that duplicate pending claims or defenses in the same matter.  (Mot. at 14-15.)  Instead, Match again relies exclusively on *Astral Health* to rebut Bumble's arguments.  (Opp. at 19.)  But that case just does not stand for what Match needs it to.  (*See* Section II(A), *supra*.)  As Bumble's claims are still pending, Counterclaims 7, 9, 10, and 11 are improper and should be dismissed.

### III.   CONCLUSION

     For these reasons, Match's Counterclaims should be dismissed.

Dated: December 20, 2018                    Respectfully submitted,

By: */s/ Matthew D. Caplan*

Joseph M. Drayton (*Pro Hac Vice*)
NY Bar No. 2875318
**COOLEY LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275
jdrayton@cooley.com

Rose S. Whelan (*Pro Hac Vice*)
DC Bar No. 999367
**COOLEY LLP**
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004
Tel: (202) 842-7800
Fax: (202) 842-7899
rwhelan@cooley.com

Michael G. Rhodes (*Pro Hac Vice*)
CA Bar No. 116127
Matthew D. Caplan (*Pro Hac Vice*)
CA Bar No. 260388
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone (415) 693-2000
Facsimile: (415) 693-2222
mrhodes@cooley.com
mcaplan@cooley.com

Deron R Dacus (TX 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: 903-705-1117
Facsimile: 903-581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiffs/Counter-Defendants:*
*Bumble Trading, Inc. And Bumble Holding*
*Ltd.*

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS – Page 11**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel

of record on December 20, 2018.

/s/ Matthew D. Caplan
Attorney Name